# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **JACK and BEVERLY RANDALL,** *Plaintiffs* § § § | |
| **v.** § § | **Case No. 1:24-CV-00466-RP** |
| **STATE FARM LLOYDS, CANNON PERDUE, and JP SEGURA,** *Defendants* § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ROBERT PITMAN
       UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiffs Jack and Beverly Randall's Motion for Remand, filed May 30, 2023 (Dkt. 17); Response briefs filed June 13, 2024 by Defendants JP Segura (Dkt. 21), Cannon Perdue (Dkt. 22), and State Farm Lloyds (Dkt. 23); Plaintiffs' Reply, filed June 19, 2024 (Dkt. 24); and State Farm's Sur-reply, filed July 3, 2024 with leave of Court (Dkt. 30).[1]

### I. Background

Texas residents Jack and Beverly Randall bring this property damage insurance coverage suit against their home insurance company, State Farm, insurance Adjuster Cannon Perdue, and insurance umpire JP Segura. The Randalls allege that their home in Fredericksburg, Texas was severely damaged in a winter storm on February 18, 2021. Plaintiffs' Original Petition, Dkt. 1-3 ¶ 7. State Farm insured the house for $1,034,200 under a homeowners insurance policy ("Policy"). *Id.* State Farm's initial damage estimate was $17,139, but the Randalls retained a public adjuster

---

[1] By Text Order entered August 20, 2024, the District Court referred the motion to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

1

who estimated the damage at $631,008. *Id.* ¶ 8. Because of the difference between the two estimates, the Randalls invoked the Appraisal provision in the Policy. *Id.* The Randalls selected Ty Patch as their appraiser; State Farm selected Cannon Perdue as its appraiser; and JP Segura was selected as the umpire. *Id.* ¶ 10. The Randalls allege that Patch submitted to Perdue an itemized Xactimate estimate of property damage of $772,764, but Perdue never prepared his own itemized estimate. *Id.*

On February 20, 2023, the two Appraisers conducted an on-site inspection of the Randalls' property. *Id.* ¶ 11. The Randalls allege that the Appraisers agreed on the damage caused by the freeze, but Perdue did not want to present that amount of agreed damages to State Farm for fear that "State Farm would never hire him again as their Appraiser." *Id.* ¶ 12. The Randalls contend that Perdue wanted to present the agreed scope of damages to the Umpire so that any Award could be by the Umpire and Perdue could have "plausible deniability." *Id.*

The Randalls allege that the Appraisers inspected the property with Umpire Segura on July 14, 2023, and "advised Umpire Segura they were 'on the same page' as to the scope and pricing." *Id.* ¶ 13. The Randalls contend that Perdue "reiterated that even though he was in general agreement with Patch's $772,764 . . . estimate, he did not want to sign the appraisal award as 'State Farm would never give him another claim.'" *Id.*

Umpire Segura issued his Proposal Award of $122,796 (replacement cost) and $115,426 (actual cost value). *Id.* ¶ 14. The Randalls allege that the proposed Award "was 100% contrary to the representations made by Perdue to Patch and Umpire Segura during their on-site inspection of the house." *Id.* They allege that Perdue and Segura "had an undisclosed agreement to disregard Patch's detailed line item Xactimate estimate" and disregard an engineer's report and "other obvious damage that was discussed and agreed to was caused by the winter freeze." *Id.* ¶ 15.

The Randalls filed suit in state court against State Farm, Perdue, and Segura, alleging: "The Appraisal Award is the result of fraud, accident, or mistake, and the Court should, as a matter of law, set aside the Award." *Randall v. State Farm Lloyds*, No. 24-17706 (216th Dist. Ct., Gillespie County, Tex. Feb 26, 2024), Dkt. 1-3 ¶ 16. The Randalls assert claims for fraud by non-disclosure against all Defendants and claims for breach of contract and the Texas Insurance Code against State Farm. *Id.* ¶¶ 19-33. They seek a declaratory judgment under the Texas Uniform Declaratory Judgments Act, TEX. CIV. PRAC. & REM. CODE § 37.003, to set aside the Appraisal Award, as well as monetary damages "over $250,000 but not more than $1M" and attorneys' fees and costs. *Id.* ¶¶ 1, 18.

With the consent of State Farm and Perdue, Segura removed this case to federal court on the basis of diversity jurisdiction. Dkt. 1. Defendants contend that removal is proper under 28 U.S.C. §§ 1441 and 1332 because there is complete diversity of citizenship between the Randalls and non-Texas citizen State Farm, and that Texas residents Segura and Perdue were "improperly joined to defeat diversity jurisdiction." *Id.* at 6. The Randalls do not dispute that they, Segura, and Perdue are all Texas citizens for diversity purposes, and that State Farm is not a citizen of Texas because all of its members are citizens of either Illinois or Arizona.[2] But the Randalls deny that they improperly joined Segura and Perdue to defeat diversity jurisdiction. They ask the Court for remand to state court.

## II. Legal Standards

A defendant may remove any civil action from state court to a court of the United States that has original jurisdiction. 28 U.S.C. § 1441. Federal district courts have original jurisdiction over

---

[2] *See Franke v. Allstate Texas Lloyds*, No. 1:12-CV-00498-LY, 2012 WL 12850259, at *2 (W.D. Tex. Dec. 7, 2012) (stating that a Lloyd's plan insurer is an unincorporated association which, for diversity purposes, is considered to have the citizenship of its members) (quoting *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877, 882 (5th Cir. 1993)).

3

two types of cases: those arising under federal law, and those in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties. 28 U.S.C. §§ 1331, 1332(a). A civil action "otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

Diversity jurisdiction typically requires "complete diversity" between all plaintiffs and all defendants. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). The judicially created doctrine of improper joinder "constitutes a narrow exception to the rule of complete diversity." *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005). If a court finds that a non-diverse defendant has been improperly joined, the court may disregard the citizenship of that defendant, dismiss the non-diverse defendant, and exercise subject matter jurisdiction over the remaining diverse defendants. *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016). Improper joinder can be established in two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (quoting *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003)).

Only the second factor is at issue. The Court must determine "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* at 573. To determine whether a plaintiff has a reasonable basis of recovery under state law, courts "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine

4

whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id.* (cleaned up).

The burden of persuasion on a party claiming improper joinder is a heavy one. *Davidson v. Georgia-Pacific, LLC*, 819 F.3d 758, 765 (5th Cir. 2016). Courts view "all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff" and resolve any "contested issues of fact and any ambiguities of state law" in the plaintiff's favor. *Travis*, 326 F.3d at 649. Courts "do not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look only for a possibility that the plaintiff might do so." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309 (5th Cir. 2005). In other words, "any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

### III.  Analysis

To show fraudulent joinder, Defendants must show that the Randalls have "no possibility of recovery" against Perdue and Segura. *Smallwood*, 385 F.3d at 568. They argue that (1) the Randalls fail to state a plausible claim for fraud by non-disclosure against Perdue and Segura, and (2) Perdue and Segura cannot provide the relief the Randalls seek, which is to set aside the Appraisal Award.

#### A.    Fraud by Non-Disclosure

To state a claim for fraud by non-disclosure under Texas law, a plaintiff must allege that: (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the non-disclosure; and (5) the plaintiff relied on the non-disclosure, which resulted in injury. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219-20 (Tex. 2019).

5

The Randalls allege that: (1) "Defendants deliberately kept silent when they had a duty to speak and by failing to disclose their appraisal award agreement" to their appraiser, Patch; (2) Defendants intended to induce Plaintiffs to refrain from acting; and (3) the Randalls "relied on Defendants['] nondisclosures and the Plaintiffs were injured as a result of acting without knowledge of the undisclosed facts." Dkt. 1-3 ¶ 19. The Randalls also allege:

> Appraiser Perdue and Umpire Segura had an undisclosed agreement to disregard Patch's detailed line item Xactimate estimate and to disregard the APEC Engineers report as well as the other obvious damage that was discussed and agreed to was caused by the winter freeze, including (1) there is no consideration for replacing the roof and flashings that were compromised during the storm event, (2) there was no consideration for replacing the roof were the soffit installed over the rafters is being replaced as you cannot install the soffit without pulling the roof off first, (3) the clearly noted and photographed water stains under the roof in the attic were ignored,[ ] (4) damage to the wood flooring in the stairs where there were leaks from both above, (5) damage noted in the kitchen at the entry of the hallway has not been addressed, and (6) the windows which had failed as demonstrated by APEC Engineering Report, and which have been leaking since the freeze (but not before) allowing mold to grow.

*Id.* ¶ 15. The Randalls assert that the Umpire's Proposal Award "was 100% contrary to the representations made by Perdue to Patch and Umpire Segura during their on-site inspection of the house." *Id.* ¶ 14.

Defendants argue that the Randalls' fraud by non-disclosure claim fails because they do not sufficiently allege that (1) Perdue and Segura had a duty to disclose their undisclosed agreement under Texas law; (2) Perdue and Segura deliberately failed to disclose material facts; (3) Perdue and Segura intended to induce Patch to act or refrain from acting based on the non-disclosure; and (4) Patch relied on the non-disclosure, which resulted in injury.

### 1. Duty and Failure to Disclose

"In general, there is no duty to disclose without evidence of a confidential or fiduciary relationship." *Bombardier*, 572 S.W.3d at 220. A fiduciary duty arises in certain formal

6

relationships, such as attorney-client, partnership, and trustee relationships. *Id.* A confidential relationship is one in which the "parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest." *Id.* (citation omitted).

Under Texas law, insurers generally do not have a fiduciary duty to the insured. *United Neurology, P.A. v. Hartford Lloyd's Ins*, 101 F. Supp. 3d 584, 615 (S.D. Tex.), *aff'd,* 624 F. App'x 225 (5th Cir. 2015). But a duty to disclose may exist when the defendant "(1) discovered new information that made its earlier representation untrue or misleading; (2) made a partial disclosure that created a false impression; or (3) voluntarily disclosed some information, creating a duty to disclose the whole truth." *Bombardier*, 572 S.W.3d at 220.

The Randalls do not argue that Perdue or Segura had a fiduciary duty to them or confidential relationship with them. Instead, they contend that Perdue and Segura had a duty to them because they made "a representation that creates a substantially false impression." Dkt. 17 at 4. The Randalls allege that Perdue did not disclose that he disagreed with the estimated damage amount he and Patch discussed in their initial inspection. Dkt. 1-3 ¶ 12. The Randalls also allege that Perdue and Segura had an agreement to reduce the scope of Patch's estimate in issuing the appraisal award. *Id.* ¶ 15.

Defendants argue that Perdue and Segura owed no duty to Patch. They analogize them to consultants and experts, citing cases in which third-party engineers, investigators, and consultants were found to be improperly joined.[3] The Court finds that those roles are factually distinguishable

---

[3] *See* Dkt. 21 at 16 (citing *Michels v. Safeco Ins. of Ind.*, 544 F. App'x 535, 540 (5th Cir. 2013); *MJ & JJ, LLC v. Clear Blue Specialty Ins.*, No. 2:19-cv-15, 2019 WL 3412598, at *3-5 (S.D. Tex. Jul. 29, 2019)); Dkt. 22 at 5 (citing *Bui v. St. Paul Mercury Ins.*, 981 F.2d 209 (5th Cir. 1993); *Muniz v. State Farm Lloyds*, 974 S.W.2d 229 (Tex. App.—San Antonio 1998, no pet.); *Dagley v. Haag Eng'g Co.*, 18 S.W.3d 787 (Tex. App.—Houston [14th Dist.] 2000, no pet.)).

from those of Perdue and Segura. Defendants also argue that Patch was on notice that Perdue and Segura disagreed with his estimates, and their intentions to reduce the award were clear. Dkt. 21 at 12, Dkt. 22 at 8.

In determining the propriety of removal, the Court must construe all contested fact issues in the Randalls' favor. *Travis*, 326 F.3d at 649. The Court finds that the Randalls have alleged sufficient facts at this stage of the proceeding to allege that Perdue and Segura owed them a duty to disclose based on partial disclosure under Texas law. *See Bombardier*, 572 S.W.3d at 220 (recognizing a duty to disclose based on partial disclosure).

Besides alleging a duty, the Randalls also must show that Segura and Perdue failed to disclose material facts. *Id.* at 219-20. The Court finds that the Randalls state sufficient facts to allege that Segura and Perdue failed to disclose Perdue's lack of agreement with Patch's estimate and Perdue and Segura's agreement to lower the appraisal amount.

The Court finds that the Randalls have sufficiently pled that Defendants had a duty to disclose material facts and failed to do so, satisfying the first and second elements of a claim for fraud by non-disclosure.

### 2. Ignorance

To satisfy the third element, the Randalls must show that Patch was ignorant of the facts and did not have an opportunity equal to Defendants to discover them. *Bombardier*, 572 S.W.3d at 219-20. The Randalls allege that Patch was ignorant of the agreement between Perdue and Segura to lower the appraisal award and of Perdue's lack of agreement with Patch's estimate. Dkt. 1-3 ¶ 19. They also allege that Patch did not have an opportunity to discover either fact. *Id.*

Defendants again dispute the Randalls' allegations on factual grounds. They claim that Patch, Perdue, and Segura discussed the appraisal award in a conference call and that Perdue told Patch during their first inspection of the property that he disagreed with Patch's estimate. Dkt. 21-1 at

14, 24. Because contested issues of fact must be resolved in the Randalls' favor, *Travis*, 326 F.3d at 649, the Court finds that they allege sufficient facts to meet the third element.

### 3. Intention and Reliance

To assert the fourth and fifth elements of a fraud by non-disclosure claim, the Randalls must allege that Defendants intended Patch to act or refrain from acting based on the non-disclosure and that Patch relied on that non-disclosure, which resulted in injury. *Bombardier*, 572 S.W.3d at 219-20. The Randalls allege that Perdue failed to disclose the material fact that he disagreed with Patch's estimate, and that if he had, Patch would have asked Perdue to itemize the damages in dispute. The Randalls cite a provision of the Policy stating that if the two appraisers proceed to the umpire process, "a written report of agreement . . . signed by any two (appraisers or umpire) will set the amount of the loss of each item in dispute." Dkt. 1-3 at 3. They argue that this provision defines Segura's authority, and because Perdue did not submit an itemized list of the damages he and Patch disputed, Segura's award was not based on the disputed damage items, was made without authority, and was the result of fraud, accident, or mistake.

Defendants contend that they did not intend to induce Patch to refrain from acting because there was no action he could have taken, arguing that Patch had no grounds under the Policy to demand that Perdue itemize his report before the parties moved to the umpire stage of appraisal. This argument is not persuasive because the Policy does not explicitly prohibit the parties from demanding itemization of a disputed amount.

Defendants also dispute the Randalls' factual allegation that the differences were not properly identified. This argument relies on the resolution of factual issues in Defendants' favor, but again, that is impermissible at this stage. Defendants do not show that the Randalls cannot establish the elements of intention and reliance.

9

The Court finds that the Randalls have asserted sufficient factual allegations to state a viable fraud by non-disclosure claim against Perdue and Segura.

### B. Relief

Finally, Defendants do not show that the Randalls have no possibility of recovery from Perdue and Segura. The Randalls seek monetary damages from Perdue and Segura for fraud by non-disclosure and would be entitled to recover damages if they succeed on that claim. *See Bombardier*, 572 S.W.3d at 221-22 (addressing damages awarded for a fraud by non-disclosure claim).

### C. Conclusion

Defendants do not show that Perdue and Segura were fraudulently joined. Removal was improper because the parties are not completely diverse, and this Court lacks subject-matter jurisdiction. For these reasons, the Court recommends remand of this case to state court. 28 U.S.C. § 1447(c); *Lutostanski v. Brown*, 88 F.4th 582, 587 (5th Cir. 2023).

## IV. Recommendation

This Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Plaintiffs' Motion to Remand (Dkt. 17) and **REMAND** this action to the 216th Judicial District Court, Gillespie County, Texas.

**IT IS FURTHER ORDERED** that this case be removed from this Magistrate Judge's docket and returned to the docket of the Honorable Robert Pitman.

## V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen

(14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on October 16, 2024.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE